GREGORY KOLOMIETS *v.* SYNCOR INTERNATIONAL CORPORATION ET AL.
(AC 17368)

Lavery, Hennessy and Sullivan, Js.

Argued September 21, 1998—officially released January 19, 1999

*Brendan T. Canty*, with whom, on the brief, was *Kevin J. Curseaden*, for the appellant (plaintiff).

*Jason M. Dodge*, for the appellees (defendants).

*Opinion*

SULLIVAN, J. The plaintiff, Gregory Kolomiets, appeals from the decision of the workers' compensation review board (board) reversing the commissioner's decision. The plaintiff claims that the board improperly (1) reversed the commissioner's determination that the plaintiff's injuries arose out of and occurred in the course of his employment and (2) applied existing law by requiring the employer's consent for the plaintiff's trip to pick up his wallet and driver's license. We reverse the decision of the board.

An examination of the record discloses the following relevant facts found by the commissioner. In January, 1993, the defendant Syncor International Corporation (Syncor)[1] hired the plaintiff as a part-time employee to deliver products from Syncor's place of business in Stamford to various hospitals in Connecticut and southern New York. Syncor dealt in radioactive products and was subject to regulation by the Nuclear Regulatory Commission. Consequently, Syncor maintained manuals at its offices in Stamford outlining the recommended routes its drivers should take when transporting its products. Routes could be changed by the drivers if necessary.

On February 10, 1993, the plaintiff reported to work and was assigned to deliver products to Lawrence Hospital in Bronxville, New York. The plaintiff used Syncor's vehicle to make the deliveries. After making his deliveries, the plaintiff discovered that he had left his wallet and driver's license at home. When the plaintiff returned to Connecticut on Interstate 95, he passed exit 6, which he would have taken to return to Syncor's offices, and instead used exit 7 to go to his home to retrieve his wallet and driver's license because he did not know if Syncor had any more deliveries for him to make that day.[2] After getting off at exit 7, the plaintiff was involved in a motor vehicle accident as a result of which he suffered injuries.

Brian Welsh, the plaintiff's supervisor, testified that he would have preferred that the plaintiff call him about the missing license, return to Syncor's office and punch out, and then use his own vehicle to go home and

[1] Also a defendant in this case is Syncor's workers' compensation insurance carrier, CNA Insurance Company.

[2] General Statutes § 14-213 provides: "Each operator of a motor vehicle shall carry his operator's license while operating such vehicle. Failure to carry such operator's license as required by the provisions of this section shall be an infraction."

retrieve his driver's license and wallet. Welsh also testified that Syncor had no additional work for the plaintiff on February 10, 1993, and, therefore, there was no work-related reason for the plaintiff to have his driver's license that afternoon. Subsequently, Syncor terminated the plaintiff from its employment because he was involved in a "preventable accident."

On January 5, 1996, the workers' compensation commissioner for the seventh district issued a finding and award for the plaintiff as a result of that accident. The commissioner found that the deviation from the plaintiff's exact job duties was minor and not so unreasonable and unwarranted as to preclude him from receiving workers' compensation benefits. On June 23, 1997, the board reversed the commissioner's finding of compensability. The board found that the plaintiff had finished delivering Syncor's products and was engaged in a completely separate side trip when he was injured.

## I

The plaintiff claims that the board improperly substituted its own findings of fact in place of those found by the commissioner when reversing the commissioner's determination that the plaintiff's injuries arose out of and occurred in the course of his employment. We agree.

At the outset, we must determine the correct standard of review. "The determination of whether an injury arose out of and in the course of employment is a question of fact for the commissioner." *Spatafore* v. *Yale University*, 239 Conn. 408, 418, 684 A.2d 1155 (1996). "The appropriate standard applicable to the board when reviewing a decision of a commissioner is well established. [T]he review [board's] hearing of an appeal from the commissioner is not a de novo hearing of the facts. . . . [I]t is oblig[ated[ to hear the appeal on the record and not retry the facts. . . . [T]he power

and duty of determining the facts rests on the commissioner, the trier of facts. . . . [T]he conclusions drawn by [her] from the facts found must stand unless they result from an incorrect application of the law to the subordinate facts or from an inference illegally or unreasonably drawn from them. . . . The commissioner's conclusions are accorded the same deference as that given to similar conclusions of a trial judge or jury on the issue of proximate cause." (Citations omitted; internal quotation marks omitted.) *Kish* v. *Nursing & Home Care, Inc.*, 47 Conn. App. 620, 623, 706 A.2d 1372, cert. granted on other grounds, 244 Conn. 919, 714 A.2d 6 (1998).

"Although a respondent has a statutory right to appeal an adverse decision to the board, the board's scope of review is limited. See *Six* v. *Thomas O'Connor & Co.*, 235 Conn. 790, 798–99, 669 A.2d 1214 (1996) (review board does not conduct de novo hearing of facts). The board may take additional material evidence . . . only if it is shown to its satisfaction that good reasons exist as to why the evidence was not presented to the commissioner. Otherwise, it is obliged to hear the appeal on the record and not retry the facts. *Fair* v. *People's Savings Bank*, [207 Conn. 535, 539, 54 A.2d 118 (1999); see also General Statutes § 31-301 (b) (describing scope of review)." (Internal quotation marks omitted.) *Kish* v. *Nursing Home Care, Inc.*, 47 Conn. App. 623–24.

"As is the standard of review, the law governing eligibility for workers' compensation is also well established. It is an axiom of [workers'] compensation law that awards are determined by a two-part test. The [claimant] has the burden of proving that the injury claimed *arose out of* the employment and *occurred in the course of* the employment. There must be a conjunction of [these] two requirements . . . to permit compensation. . . . *McNamara* v. *Hamden*, [176 Conn. 547, 550, 398 A.2d 1161 (1979)]. The former requirement

relates to the origin and cause of the accident, while the latter requirement relates to the time, place and [circumstance] of the accident. Id." (Emphasis in original; internal quotation marks omitted.) *Mazzone* v. *Connecticut Transit Co.*, 240 Conn. 788, 792–93, 694 A.2d 1230 (1997).

"[T]o establish that [the] injury occurred in the course of employment, the claimant has the burden of proving that the accident giving rise to the injury took place '(a) within the period of employment; (b) at a place [he] may reasonably [have been]; and (c) while [he was] reasonably fulfilling the duties of the employment or doing something incidental to it.'" Id., 793.

The commissioner found that the plaintiff met the requirements set forth in *Mazzone*. The plaintiff's injuries occurred within the period of his employment at a place where he may reasonably have been while reasonably fulfilling duties incident to his employment. The commissioner specifically found that the plaintiff might have been given additional driving responsibilities that day. Retrieving his driver's license was, the commissioner found, in the best interests of both the plaintiff and Syncor because it ensured compliance with motor vehicle laws on any further deliveries that day. The commissioner further found that the plaintiff's action was only a minor deviation from his responsibilities, which did not preclude the payment of workers' compensation benefits.

Because the commissioner's determination had an adequate foundation in the facts and because the board cannot substitute its findings regarding the facts for those of the commissioner, we conclude that the board improperly reversed the commissioner's determination.

II

The plaintiff also claims that the board misapplied the law by making employer consent a prerequisite to

compensability under the joint benefit exception. We agree.

An employer's consent is not required when an act incidental to the plaintiff's employment furthers the business of the employer and the deviation is minor. The deviation was made so that the plaintiff could retrieve his driver's license to be in compliance with the state motor vehicle laws. This slight deviation by the plaintiff did not remove him from the scope of his employment. The consent of Syncor is not required for the plaintiff to be eligible for workers' compensation benefits under the facts of this case.

The defendant argues that the plaintiff did not meet the "joint benefit" exception set forth in *Dombach* v. *Olkon Corp.*, 163 Conn. 216, 224, 302 A.2d 270 (1972). "Larson refers to this as the dual-purpose-trip rule and summarizes it as follows: '[W]hen a trip serves both business and personal purposes, it is a personal trip if the trip would have been made in spite of the failure or absence of the business purpose and would have been dropped in the event of failure of the private purpose, though the business errand remained undone; it is a business trip if a trip of this kind would have been made in spite of the failure or absence of the private purpose, because the service to be performed for the employer would have caused the journey to be made by someone even if it had not coincided with the employee's personal journey.' 1 Larson, Workmen's Compensation Law, p. 294.5." *Dombach* v. *Olkon Corp.*, supra, 224.

We agree with the plaintiff's assertion that *Dombach* does not require employer consent with respect to the type of minor deviation that occurred in this case. In *Dombach*, the trip conferred a joint benefit by serving both business and personal objectives, but the deviation was entirely personal. Here, the deviation itself served business and personal objectives and was minor.

"In determining whether an unauthorized deviation from the employment is so slight as not to relieve the employer from liability, or of such a character as to constitute a temporary abandonment of the employment, [t]he true test is analogous to that applied to determine whether a deviation in agency terminates that relationship. *Herbst* v. *Hat Corporation of America*, 130 Conn. 1, 7, 31 A.2d 329 (1943). [T]he trier must take into account, not only the mere fact of deviation, but its extent and nature relatively to time and place and circumstances, and all the other detailed facts which form a part of and truly characterize the deviation, including often the real intent and purpose of the servant in making it. *Ritchie* v. *Waller*, 63 Conn. 155, 165, 28 A. 29 (1893). *Luddie* v. *Foremost Ins. Co.*, 5 Conn. App. 193, 196–97, 497 A.2d 435 (1985)." (Internal quotation marks omitted.) *Kish* v. *Nursing & Home Care, Inc.*, supra, 47 Conn. App. 626.

The plaintiff was injured on a highway while doing something incidental to his regular employment, which was a benefit to himself and to Syncor. Although the plaintiff's trip to his home was done without the knowledge of Syncor, it furthered the interests of Syncor because the plaintiff would have met the state motor vehicle requirement that he carry his driver's license while operating a vehicle for Syncor's benefit.

The decision of the workers' compensation review board is reversed and the case is remanded with direction to affirm the commissioner's decision.

In this opinion the other judges concurred.